UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON ROBERT HUCKER, CDCR # P-73941,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPER DAUB; MEGHAN BROWN; VERA MELKUMYAN; ANTJE MORAN; and SENECA SHARP,<br><br>Defendants. | Case No.: 21-CV-577 JLS (AHG)<br><br>**ORDER (1) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*; (2) DENYING MOTION FOR APPOINTMENT OF COUNSEL; AND (3) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT AND SUMMONS PURSUANT TO 28 U.S.C. § 1915(d) AND FEDERAL RULE OF CIVIL PROCEDURE 4(c)(3)**<br><br>(ECF Nos. 2, 3) |

On April 1, 2021, Plaintiff Jason Robert Hucker ("Plaintiff" or "Hucker"), currently incarcerated at Robert J. Donovan State Prison ("RJD") and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* ECF No. 1 ("Compl."). Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a); instead, he filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 2 ("IFP Mot."). He also has filed a Motion for Appointment of Counsel. *See* ECF No. 3 ("Counsel Mot.").

1

# MOTION TO PROCEED *IN FORMA PAUPERIS*

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). An action may proceed despite the plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether his action is ultimately dismissed, *see* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, a court assesses an initial payment of twenty percent of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1), 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at twenty percent of the preceding month's income, in any month in which his account exceeds ten dollars, and forwards those payments to the court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85.

///

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

2

In support of his IFP Motion, Plaintiff has submitted a Prison Certificate signed by an RJD accounting officer attesting to Plaintiff's monthly balances and deposits as well as an Inmate Trust Account Report. *See* ECF No. 5; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. The certificate shows Plaintiff had an average monthly deposit of $0.00 to his account, maintained an average balance of $0.00 in his account over the six-month period preceding the filing of the instant Complaint, and had an available balance of $0.00 as of April 5, 2021. *See* ECF No. 5 at 1; 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 577 U.S. at 85; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court **GRANTS** Plaintiff's IFP Motion and declines to exact any initial filing fee, as Plaintiff's trust account statement shows he now "has no means to pay it." *Bruce*, 577 U.S. 84–85. The Court directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

**SCREENING PER 28 U.S.C. §§ 1915(E)(2)(B) AND 1915A(B)**

I. **Legal Standard**

Because Hucker is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous

3

21-CV-577 JLS (AHG)

or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference," when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

**II. Plaintiff's Allegations**

Hucker alleges that in August 2019 he was assigned to the Correctional Clinical Case Management System ("CCCMS") level of mental health care when he found himself suffering from "depression" and "helplessness," began "hearing voices and [was] a danger

4

21-CV-577 JLS (AHG)

to himself . . . ." Compl. at 3. Hucker claims he reported this to the Defendants, telling them that he was "having suicidal thoughts" and "was having trouble dealing with his long prison sentence as he was approaching his twentieth (20th) anniversary of his incarceration." *Id.* As a result, his level of care was increased to the Enhanced Outpatient Program ("EOP"). *Id.*

Hucker was placed in a new cell as an EOP patient where he met his new cellmate, Joseph Culfin, who was transgender. *Id.* Hucker states he developed an emotionally intimate relationship with Culfin, who Hucker refers to as his girlfriend, which brought "positive changes . . . into each other's lives." *Id.* Hucker alleges, however, that Defendant Melkumyan "seemed to become obsessed with his relationship [with Culfin] and started making her treatment decision[s] based upon his relationship instead of his actual mental health and problems he was having." *Id.* According to Hucker, Melkumyan told him he "could do better than [Culfin]," and "filed numerous false mental health reports claiming . . . Plaintiff had gone EOP to be with his girlfriend and began advocating for the Plaintiff to be removed from EOP and placed back on CCCMS level of care . . . ." *Id.* at 3, 8. Hucker alleges Melkumyan did so even though she knew he was "struggling with his depression and other mental health issues." *Id.* at 8.

In January 2020, Hucker's level of care was reduced from EOP to CCCMS. *Id.* Hucker claims the move was made a month earlier than was recommended by his Interdisciplinary Treatment Team ("IDTT") and that it was made for the purpose of separating him from Culfin. *Id.* Defendants Brown and Melkumyan were assigned to his therapy team. *Id.* Hucker contends he "repeatedly told both Defendants Brown and Melkumyan that his depression was worsening" because he had learned that his mother, who was the only family member who was visiting Hucker, was moving to Nebraska to care for Hucker's sister who was having her kidney removed. *Id.* Hucker also allegedly told Brown and Melkumyan that his medication was not helping to alleviate his depression. *Id.* at 8–9. Hucker claims he also told Defendant Antje Moran about his depression symptoms, that his medication was not working, "that he was hearing voices, and that [he]

5

did not want to live anymore." *Id.* at 9.  Hucker alleges no changes were made to his medication or mental health care, and he was given only "weak platitudes" in response. *Id.*

Sometime later, Hucker's aunt died. *Id.* When Hucker told Brown and Melkumyan about his aunt's death, he claims they told him, "ain't that convenient," and, "oh, it's not that bad, [y]ou'll be okay." *Id.* Hucker states he told Brown and Melkumyan that the main source of support, his girlfriend Culfin, was in ad-seg and he could not contact her. *Id.* at 9–10. Melkumyan allegedly told Hucker, "You're better off with her gone. You can do better." *Id.* at 10. Hucker claims Brown and Melkumyan "were basing their treatment decisions [on] the Plaintiff's relationship instead of his actual mental state, feelings and actual mental health despite his telling all three defendants that he was starting to wish his life would just end." *Id.*

Over the next few months, several members of Hucker's family died and his father disowned him. *Id.* According to Hucker, his mental state began to deteriorate further, and he told Brown, Melkumyan, and Moran that "he did not believe that he had anything left to live for and desired to end his life." *Id.* Hucker claims he tried to place a "do not resuscitate" order in his medical file but was told such a directive would not apply to a suicide attempt. *Id.* Hucker alleges that Brown, Melkumyan, and Moran continued to do nothing to alleviate his mental health issues and in fact "repeatedly filed false reports claiming custody staff and other people had told them that the Plaintiff was just trying to get back to EOP to be with his girlfriend." *Id.* at 11.

In April 2020, Hucker's classification was abruptly changed when he was sent to an emergency classification committee. *Id.* He contends that this "sudden removal from the Plaintiff's only active support group caused his senses of hopelessness and helplessness and his feeling of depression to increase as mental health staff had so far failed to provide any meaningful treatment." *Id.* He sent an Inmate Request for Interview form to Brown following this change. *Id.*

Hucker claims Defendant Daub "refused to intervene despite the fact that the Plaintiff had stated that without the outreach support group he had [in his old

6

facility], . . . he would not manage to survive." *Id.* According to Hucker, Daub told him to work with his therapy team, and when Hucker attempted to secure Daub's supervisor's review of his interview request, Daub interfered and prevented Hucker from escalating his complaints to the supervisor level. *Id.* at 11–12. At this point, Hucker contends, he "believe[d] no one cared about him including his mental health care team and that he should just end his life." *Id.* at 12. Hucker states he submitted "numerous health care service requests" that were ignored, and that "numerous correctional officers turned in MH5 forms requesting mental health staff to intervene and treat the Plaintiff to no avail." *Id.*

On April 27, 2020, Hucker learned that his grandfather had died. *Id.* at 13. At this point, Hucker tried to commit suicide by cutting his arm open with a razor blade. *Id.* Hucker's cellmate saw what he was doing, forcefully stopped Hucker from cutting himself further, and yelled for help. *Id.* Hucker claims that had his cellmate not acted, he "would have made as many cuts as necessary to end his life." *Id.* Hucker was taken to the Triage and Treatment Area ("TTA") for emergency medical assistance, where he received thirteen stiches to close the cut he had made. *Id.*

Hucker then claims that Defendant Seneca Sharp wrote in his notes that Hucker had engaged in "self-injurious behavior" and that Hucker had cut himself "to relieve stress" despite being told by Hucker that he had attempted suicide. *Id.* at 14. According to Hucker, these falsehoods exacerbated his mental health issues and led mental health clinicians who reviewed his medical files to believe that he "was just putting on an act and faking symptoms merely to get back to his girlfriend who was placed in ad-seg on April 13, 2020 well before Plaintiff's suicide attempt." *Id.* Hucker contends he continues to be denied mental health care. *Id.* at 14–15. He seeks both monetary damages and injunctive relief. *Id.* at 7.

**III. 42 U.S.C. § 1983**

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive

7

rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**IV. Analysis**

Hucker alleges his Eighth Amendment rights to mental health care and to be free from cruel and unusual punishment were violated when Defendants failed provide him with proper mental health care by responding to his assertions that he was going to kill himself. Compl. at 3, 8–15. The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what

medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105–07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Rather, "[t]o 'show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016)). "[A] purposeful act or failure to respond to a prisoner's pain or possible medical need" that causes harm is sufficient to establish deliberate indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997; *Jett*, 439 F.3d at 1096; *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059 (citing *Wood*, 900 F.2d at 1337–41). "A heightened suicide risk or an attempted suicide is a serious medical need." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *vacated*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011) (citing *Farmer*, 511 U.S. at 837); *see also Arellano v. Dean*, No. 15-cv-2274 JLS (JLB) 2020 WL 1157190, at *2 (S.D. Cal. March 10, 2020) (finding that "suicidal ideations 'satisf[y] the objective component of a serious medical need'") (quoting *Kamakeeaina v. City & Cty. of Honolulu,* No. 11-cv-00770 JMS, 2014

9

WL 1691611, at *7 (D. Haw. Apr. 29, 2014), *affirmed sub nom. Kamakeeaina v. Maalo*, 680 F. App'x 631 (9th Cir. 2017) (finding statements that plaintiff was "ready to commit suicide" sufficient to show serious medical need)).

Hucker alleges he told Defendants Brown, Melkumyan, and Moran that his depression was worsening, that his medication was not helping, that he "did not want to live anymore," and that he "desired to end his life." Compl. at 9–10. According to Hucker, these Defendants did not adjust his medication, change the psychiatric care he was being given, or put into place any safeguards to ensure he did not commit suicide. *Id.* at 3, 8–15. Hucker further alleges that upon being made aware of his desire to commit suicide, Daub did not intervene to ensure Brown, Melkumyan, and Moran were addressing Hucker's suicidal ideations. *Id.* at 11–12. He claims that, as a result of these actions, he did attempt to commit suicide and was unsuccessful only because he was forcefully stopped by his cellmate. *Id*. These allegations indicate Brown, Melkumyan, Moran, and Daub failed to respond to Hucker's medical needs and that this failure caused Hucker harm. *See Jett*, 439 F.3d at 1096. Thus, Hucker has plausibly stated an Eighth Amendment claim against Brown, Melkumyan, Moran, and Daub. *Iqbal*, 556 U.S. at 678.

In addition, Hucker alleges that, when he was taken to the medical triage unit to have his wound stitched, Seneca falsely claimed he had not attempted suicide and noted this conclusion in Hucker's medical file. *Id.* at 14–15. According to Hucker, Seneca's false documentation caused medical and psychiatric staff at the prison to continue to ignore his desire to commit suicide and to fail to provide him adequate mental health care. *Id*.; *Jett*, 439 F.3d at 1096. These allegations are sufficient to plausibly state an Eighth Amendment claim against Seneca as well. *Iqbal*, 556 U.S. at 678.

## MOTION FOR APPOINTMENT OF COUNSEL

Hucker also requests the appointment of counsel in the case because he is not an "experienced jailhouse lawyer," suffers from mental health issues, has limited access to the prison law library and potential inmate witnesses, and will need the aid of an attorney to cross-examine witnesses. *See* Counsel Mot. at 2–3. There is no constitutional right to

counsel in a civil case, and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exception circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment). Such exceptional circumstances exist where there is a cumulative showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims in light of their legal complexity. *See Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

"Concerns regarding investigation and discovery are . . . not exceptional factors," and while a pro se litigant "may not have vast resources or legal training," these are simply among the commonly shared "types of difficulties encountered by many pro se litigants." *Wells v. Washington State Dep't of Corr.*, No. C13-234 RJB/KLS, 2013 WL 4009076, at *1 (W.D. Wash. Aug. 5, 2013). Here, nothing in Plaintiff's Complaint suggests he is incapable of articulating the factual basis for his Eighth Amendment claim, which appears "relatively straightforward." *Harrington*, 785 F.3d at 1309. In fact, the Court has found, based on its initial screening of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that Plaintiff has stated a plausible claim for relief. *See Meeks v. Nunez*, No. 3:13-cv-00973-GPC-BGS, 2017 WL 476425, at *3 (denying ADA inmate appointment of counsel where inmate "successfully survived screening" and had submitted motions "drafted with clarity and [asserting] proper arguments"); *Garcia v. Blahnik*, Civil Case No. 3:14-cv-00875-LAB-BGS, 2016 WL 4269561, at *3 (S.D. Cal. Aug. 15, 2016) (finding no "exceptional circumstances warranting a judicial request for a voluntary legal counsel" where Plaintiff's psychiatric disorder and limited access to the law library did not "prevent[] him from filing a well-articulated complaint and other motions with the Court").

In addition, while Plaintiff may have sufficiently *pleaded* a plausible Eighth Amendment claim at this preliminary stage of the proceedings, he has yet to demonstrate, and it is too soon to tell, whether he likely to succeed on the merits. *Harrington*, 785 F.3d

11

21-CV-577 JLS (AHG)

at 1309; *Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved but did not show likelihood of succeed on the merits); *see also Dickey v. Strayhorn*, Civil Case No. 3:17-cv-00546-JLS-JLB, 2017 WL 3118797, at *1 (S.D. Cal. July 21, 2017), *reconsideration denied*, Civil Case No. 3:17-cv-00546-JLS-JLB, 2017 WL 4271975 at *1 (S.D. Cal. Sept. 26, 2017) ("To demonstrate that he has a likelihood of success at trial, Plaintiff must do more than merely allege that one of his constitutional rights was violated. He must provide evidence to the effect that he has a likelihood of success on the merits of his allegations."); *Torbert v. Gore*, Civil Case No. 3:14-cv-02991-BEN-NLS, 2016 WL 1399230, at *1 (S.D. Cal. Apr. 8, 2016) ("A plaintiff that provides no evidence of his likelihood of success at trial fails to satisfy the first factor of the [exceptional circumstances] test.").

Accordingly, the Court finds no "exceptional circumstances" exist at this preliminary stage of the case and **DENIES** Plaintiff's Counsel Motion **WITHOUT PREJUDICE**.

## CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** Plaintiff's Motion to Proceed *in Forma Pauperis* pursuant to 28 U.S.C. § 1915(a) (ECF No. 2);

(2) **DIRECTS** the Secretary of CDCR, or his/her designee, to collect from Hucker's trust account the $350 filing fee owed in this case by garnishing monthly payments in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in Hucker's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). *ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION*;

(3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001; or, in the alternative, to forward an electronic copy to trusthelpdesk@cdcr.ca.gov;

1　　　　(4)　　**DENIES** Plaintiff's Motion for Appointment of Counsel (ECF No. 3);

2　　　　(5)　　**DIRECTS** the Clerk of the Court to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendants and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each Defendant. In addition, the Clerk of the Court **SHALL PROVIDE** Plaintiff with a certified copy of this Order, a certified copy of his Complaint, and the summons so that he may serve them upon Defendants;

　　　　(6)　　Upon receipt of this "IFP Package," Plaintiff must complete Form 285 for each Defendant as completely and accurately as possible, include an address where each named Defendant may be found and/or subject to service, and return them to the U.S. Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package;

　　　　(7)　　**ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the named Defendants as directed by Plaintiff on each Form 285 and promptly file proof of service, or proof of any attempt at service left unexecuted, with the Clerk of the Court. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3);

　　　　(8)　　**ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and thus made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the defendant is required to respond); and

　　　　(9)　　**ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants—or, if appearance has been entered by counsel, upon Defendants' counsel—a copy of every further pleading, motion, or other document submitted for the

Court's consideration pursuant to Federal Rule of Civil Procedure 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel, as well as the date of service. *See* S.D. Cal. CivLR 5.2. *Any document received by the Court that has not been properly filed with the Clerk of the Court or that fails to include a Certificate of Service upon Defendants may be disregarded.*

**IT IS SO ORDERED.**

Dated: June 22, 2021

Hon. Janis L. Sammartino
United States District Judge